UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LISA J. WAGNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:19-CV-111-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Lisa Wagner appeals the Social Security Administration's decision to deny her application for Disability Insurance Benefits. Wagner alleges disability based upon a whole host of medical issues, including pain and osteoarthritis in her hips despite a replacement surgery of her right hip, arthritis in her knees even after three surgeries on each knee, pain in her hands, shoulders, and back, Raynaud's Syndrome (a condition that causes areas of the body to feel numb and cold), and depression. [Tr. 57-65.][1] An administrative law judge found that Wagner was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity (RFC) to perform sedentary work with certain postural restrictions and limited to work not done at a production rate pace.

---

[1] Citations to the record will be indicated as "Tr. __" and indicate the pagination found in the lower right-hand corner of the record found at DE 11.

Wagner challenges the ALJ's decision on three main grounds. First, she contends the ALJ failed to properly evaluate Wagner's symptoms (formerly called the credibility analysis). Second, Wagner argues the ALJ erred in evaluating the medical opinion evidence. Last, Wagner disputes the RFC and vocational findings, claiming they are not supported by substantial evidence. Because I find that the ALJ mischaracterized Wagner's activities of daily living, he failed to properly evaluate Wagner's symptoms. Therefore I will **REVERSE** the ALJ's decision and **REMAND** on this issue.

## Discussion

The ALJ found that Wagner had the severe impairments of status post surgeries bilateral hips with osteoarthritis, Raynaud's, and depression. [Tr. 25.] Aside from these severe impairments, Wagner has several other medical challenges, including diabetes, chronic urinary tract infections, psoriasis, rheumatoid/inflammatory arthritis, and fibromyalgia, which are fully recounted in the ALJ's opinion and need not be repeated here. [*Id.*]

Let's start with a review of the legal framework. I am not supposed to determine from scratch whether or not Wagner is disabled. Rather, I only need to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). My review of the ALJ's decision is deferential. This is because the "substantial evidence" standard is not a particularly rigorous one.

In fact, the Supreme Court announced long ago that the standard is even less than a preponderance-of-the-evidence standard.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Of course, there has to be more than a "scintilla" of evidence.  *Id.*  So in conducting my review, I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence."  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Nonetheless, the review is a light one and the substantial evidence standard is met "if a reasonable person would accept it as adequate to support the conclusion."  *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

The regulation that previously governed credibility determinations, SSR 96-7p, was superseded by SSR 16-3p in March 2016.  Because the ALJ's decision was issued in June 2018, SSR 16-3p is the proper standard for me to consider.  SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  The "change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' characters; obviously, [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."  *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Under the new regulation an ALJ is still required to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms.  *See* SSR 16-3p, 2016 WL 1119029, at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

3

The ALJ's determination "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *9 (Mar. 16, 2016).

Courts historically have not overturned the ALJ's credibility determination unless it was "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). While this is certainly a high bar, in this case, the ALJ's assessment of Wagner's daily living activities was patently wrong. This is what the ALJ concluded about Wagner's daily living activities:

> The claimant's admitted activities of daily living also suggest the claimant is not as limited as alleged and remains capable of performing work within the restrictions as set forth herein. For example, she reported being capable of preparing meals, performing housework, cleaning, doing laundry, watching television, caring for her dog, driving, and shopping despite her symptoms (8E/1-5).

[Tr. 29.]

In support of this statement, the ALJ cites Exhibit 8E, which is Wagner's Function Report dated September 1, 2016. A comprehensive review of the report shows that the ALJ has grossly mischaracterized what he claims are Wagner's "admitted" activities of daily living. Wagner states in the questionnaire that she currently lives with her husband. She says she gets up "mostly with assistance from my husband," showers with assistance, and gets dressed with assistance. [Tr. 237.] With regard to her dog,

4

Wagner "tr[ies] to let her out but my husband primarily takes care of her . . . [her husband] feeds, bathe[s], walks dog. He also takes her to appts." [Tr. 238.] In response to the question, "[w]hat were you able to do before your illnesses, injuries, or conditions that you can't do now?" Wagner answered, "exercise, grocery shop, daily chores, work, walk long distance." [*Id.*] For meals, Wagner stated, "I may make myself a sandwich but my husband makes the majority of meals." [Tr. 239.] When asked to explain why she cannot prepare meals, Wagner answered, "[t]here are days I can't get out of bed to do anything." [*Id.*] For household chores, Wagner wrote, "I try to do laundry at least fold it. I'm totally dependent on my husband for household repairs, mowing, yard work and deep cleaning. I try to dust and sweep on good days but my husband does this the majority of the time. I can't lift clothes basket or heavy items." [*Id.*] She also wrote, "I need help doing most things. With depression I notice I need encouragement." [*Id.*]

The questionnaire also has a section entitled "getting around." Wagner answered that some days she does not go outside at all because she can't get out of bed and has trouble ambulating because she is too weak. [Tr. 240.] In answering questions about driving, Wagner said she can drive, but has trouble getting in and out of the car by herself and doesn't drive much because of her pain medications. [*Id.*] For shopping, Wagner wrote the last two times she tried to go to the store herself, she had to call her husband to come get her because she was in so much pain, and he had to finish the shopping. [*Id.*] So she lets her husband do the shopping from now on. [*Id.*]

Wagner's answers to the questionnaire basically establish that her pain and weakness significantly affect her daily living activities and limit her abilities to do even simple acts. Wagner's mother, Rebecca Hosier, completed a third party Function Report on March 25, 2016, and her answers echo those of Wagner. [Tr. 217-224.]

Additionally, Wagner's answers to the questionnaire are consistent with her and her husband's testimony during the oral hearing before the ALJ held on November 2, 2017. Wagner testified that her pain limits her: "I'm not active. I don't, I can't go to the grocery store by myself anymore, I'm not able to do a lot of household chores anymore." [Tr. 57.] Mr. Wagner was called as a witness during the hearing as well. He testified that he has to help Wagner get out of bed in the morning, get her to the bathroom, get her cleaned up, and get her dressed. [Tr. 78.] He testified that for the last year and a half, he has done all of the household chores including cooking, sweeping, doing the dishes, etc. [Tr. 79.] Mr. Wagner said he could count on one hand how many times his wife could do anything within the last year and a half like help with the laundry or cook. [Tr. 79-80.] He said if she tries to do any chores, "the pain returns again. It's like she's just over-exerted herself." [Tr. 80.]

The ALJ inappropriately expanded Wagner's ability to do daily living activities and found her to be way more capable than the record supports. The questionnaire and hearing both consistently show that she is extremely limited. "These minimal daily activities do not support the ALJ's finding that [Wagner] exaggerated h[er] symptoms, nor do they support the ultimate RFC." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019)

(citing *Clifford*, 227 F.3d at 872); *see also Daugherty v. Berryhill*, No. 1:18-cv-256, 2019 WL 2083033, at *24 (N.D. Ind. May 13, 2019) (ALJ improperly failed to explain how "minimal daily activities were inconsistent with her testimony of disabling limitations."); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) ("the ALJ ignored [claimant's] qualifications as to *how* he carried out those activities.") (emphasis in original). The ALJ in this case said that he used the daily living activities in determining the work Wagner was capable of performing, and the restriction parameters. Therefore, this error was not harmless. It affected the RFC determination.

There is another problem with the ALJ's assessment of Wagner's symptoms. He also discounted her testimony because "[t]he record fails to fully substantiate the allegations of disabling symptoms." [Tr. 29.] Under C.F.R. § 404.1529(c)(2), the Social Security Administration "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." The Seventh Circuit has held that an "ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting the ALJ erred in her "belief that complaints of pain, to be credible, must be confirmed by diagnostic tests"); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("Pain is always subjective in the sense of being experienced in the brain."). Yet the ALJ did just that in

7

finding "the objective physical record does not support the severity of alleged disabling symptoms." [Tr. 29.]

In sum, this case must be remanded for the analysis of Wagner's subjective symptoms. *See Carradine*, 360 F.3d at 754 (remanding credibility determination where ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness."). On remand, the ALJ should re-evaluate Wagner's subjective symptom statements, with due regard to her Function Report, hearing testimony, and testimony of her husband about her daily living activities.

\* \* \*

Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues raised by Wagner, including that the ALJ erred in evaluating the medical opinion evidence and the RFC and vocational findings are founded upon legal error and not supported by substantial evidence. She can raise those issues directly with the ALJ on remand.

## Conclusion

For the reasons set forth above, the Commissioner of Social Security's final decision is REVERSED and this case is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

ENTERED: May 5, 2020.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT